in the calendar 22-902CR and across the field 22-1136CR, United States v. Martinez. And again, we'll give everybody a minute to organize themselves. Thank you. Thank you. Why don't we just wait one minute. Let's let everyone who is looking to leave the courtroom sort of get themselves where they would like to be and then we can proceed. Thank you. Okay. Why don't we proceed then? I understand then, because this involves an appeal and a cross appeal, there is going to be a little bit more backing and forthing than usual. And I understand that the way the parties have all agreed to proceed is that the appellant, Mr. Rico, will proceed for 10 minutes. The government will then speak for 12, which will constitute its response to the appeal and its affirmative presentation of its cross appeal. Mr. Rico will then take five minutes that he will have reserved, and then the government will end and its rebuttal will be limited to a discussion of a cross appeal. And that will be three minutes. Do I have that right? Sounds about right. Okay. We'll work with it. So thank you very much. All right. Why don't we all proceed? Okay. This is difficult to follow. I think that should be 10 minutes. Yeah, we're starting with 10. We're starting with 10. I got it. Why don't we take it from the top? We'll hit 10 o'clock. All right. Now we go. Difficult to follow, but important nevertheless. This is a case that was very troubling to Judge Cormitt, as this Court is aware is one of the most senior members of the Court. I was involved in both trials below for Judge Cormitt and, of course, now on appeal. The issue raised on appeal has to do with the sufficiency of the evidence, but even viewing the evidence in total, whether or not the verdict is supported by the evidence in this case. What's striking about this case and what we talked about in our brief was that at the center of this case, and the reason why you have these different verdicts is because there was a very serious Brady violation in this case. Well, that's water under the bridge, right? We're not asked to rule upon a Brady violation that was ruled upon by the district court. We're here after trial number two. So I understand that you're challenging the conviction on counts four and five. Yes. And you're arguing that there was insufficient evidence. Is that correct? That's right. Why don't you tell us why you think there was insufficient evidence as to those two counts? Fine. The deprivation count required a finding of aggravating sexual abuse. There's no evidence of aggravating sexual abuse. Okay, but I thought the witness, the victim, or in your view, the alleged victim, testified flat out. And if believed, if the jury believed her testimony, that would be adequate. Well, let me ask you this. If the jury believed her testimony, in your view, would that be sufficient to support the convictions under counts four and five? Answer yes, and that's what trouble- Okay, so normally we have a rule that it's up to the jury to decide whether to believe a witness. And it's only when a witness's testimony defies the laws of gravity or something. It's just that no reasonable, no rational, not reasonable, but no rational fact finder could have believed that testimony that we would overturn it. So tell us, so let me back up. Do you agree that's the standard? Of course. Okay, so why don't you tell us why no rational fact finder could have believed the victim's testimony as to those two counts? Because the jury rejected that very same testimony with respect to the same conduct. And we're perfectly fine with inconsistent verdicts. I mean, that's a longstanding rule. So you can't compare which verdict was, in your view, correct, and say there are other inconsistent verdicts, therefore they must be incorrect. You've got to look at the evidence on its own and describe how, for example, if the witness described everyone was walking on the ceiling, and then we say, well, that's impossible. No rational jury could have believed that. I think that's what Judge Corman said. I'm very familiar with the record. Again, but we're reviewing what Judge Corman said. And, of course, he didn't rule on Rule 29. He did not grant the judgment of acquittal, although it sounds like he said it at sentencing. I think he did say it at sentencing. I think what he said was even if it was filed, he wouldn't be able to do it for the reasons the court stated. So why, though? Now convince us. Because I believe that when you look at this record as a whole, which is what should be done, that you do have a rare case, and this is that case, where you have the extensive not guilty verdicts with respect to the same conduct, the same facts. You're coming back to the inconsistency. I'm not sure it is the same conduct. I'm sorry. I'm not sure it is the same conduct. What you have here, as I understand it, is that the aggravated counts were found to be not proven with respect to the oral sex, but found to be proven with respect to the vaginal rape charge. And it seems to me, I mean, you could say, I could say, you either believe the witness's story or you don't, and she testified to enough force that if believed, it would constitute aggravated offense as to the oral sex charge. But the jury doesn't have to believe it all, and the standard is proof beyond a reasonable doubt. And if the jury had its doubts about that testimony with respect to the initial sexual assault, then you have, with respect to the vaginal intercourse, you have the corroborating testimony of other prisoners that says that when Maria, the alleged victim, returned to population, she was very distraught. She was bleeding vaginally to a serious extent that they helped her with. So it seems to me that I can easily imagine a jury saying, look, I may have my doubts that this started out exactly the way that she said, but by the time it ended, there's corroboration of physical force. Why wouldn't that be a perfectly reasonable thing for some jurors to think? Judge, I don't take the position that what Your Honor just stated is a truism. I would say that in this case, with respect to the deprivation count, what you needed was conduct outside of that, greater than the force that it took to commit the rape. That's with respect to count four. And what we don't have here, and it was something that Judge Cormier pointed out, was a situation where you had an aggravated sexual abuse. And that is that the threat or the actual force to have the person comply with his physical involvement with the victim. Yeah, but women don't always or even that often bleed after an act of intercourse that was accomplished solely by the amount of force that's required to accomplish penetration. That suggests to me that there was additional force used and evident that seems to me a perfectly reasonable reason why the jury would believe that at least that part of what went on was not only non-consensual, but was forced by serious physical attack. That may or may not be what happened. It may or may not be true. But why is that something no juror could believe? Judge, with respect to count five, I don't disagree with Your Honor. But with respect to count four, what we're arguing is that there had to be something greater than the force that took place during the sexual encounter. And that is- But she testified that there was. She testifies that- Well, the judge- She puts it on the desk. Forget about what the judge says. We're reviewing the evidence. We may agree or disagree with the judge. Okay. But the evidence is that he put her on the desk and he did this to her. He forcibly did it. He testified to that, right? I think I'm not- And you may be saying she's lying and she- I'm not saying she's lying. Or mistaken, but- I'm not saying she's mistaken. I'm trying to communicate to the court the following, that you do have force during the act of a rape. There was testimony with respect to that. With respect to the deprivation count, that count requires force or the threat of force. The threat of force has to be serious physical injury or death. That's the subsection of threat of force. On force, the force has to be outside of the act itself. In other words, if you don't- But, no, let me just finish. Yes, sir. No problem. I think she testified in a way that suggests that there was force beyond the actual act, the sexual act. She testified that he turned her around and threw her on the desk. I think the force that the deprivation count talks about, both in both subsections, is that the person is put under fear or force of threat that if they don't comply with being raped, that something like this, the throat will be cut. You'll be shot. You'll be injured. And that's what's not there with respect to count four. Do not disagree with the court with respect to count five. Simple point. Okay. So, count five, you're no longer challenging? Well, Judge, I'm not withdrawing the challenge. I'm not withdrawing the challenge. You're saying you have a better case as to count four than as to count five. Just an interpretation of the statute that's in the record. Forget about what Judge Corman said. It's in the record to be considered by this court. And I'm coming down to stretch on this issue. And the Brady issue is not done, so to speak, because it was a part of the challenge on the governance brief, and we alluded to it in our main brief, was that Judge Corman's sentence was reasonable, both procedurally and subsequently. And it has to do with the great amount of work that went into Judge Corman's decision, which he talked about on the record. And that is the tremendous amount of documents that he relied upon, which was that very important interview of April 17, 2018. He relied upon the telephone calls, what he called the Facebook investigation. Can I just interrupt you? Yes, sir. We have limited time here. I'm done. And let me just ask you about a basic principle. Yes. If a district court bases a sentence on a fact or a factual finding that is inconsistent with a guilty verdict, a valid guilty verdict of the jury, has the judge thereby based the sentence on a clearly erroneous factual finding? Only unless if the court is basing its decision on acquitted conduct and there's a preponderance of evidence that supports that. Well, that's when you're allowed to do it. That's right. What I'm saying is, does a district judge commit a clear error in the opposite circumstance where you have a valid jury verdict? And let's take it out of this case. Let's say it's a bank robbery. The jury convicts somebody of armed bank robbery, okay? And the judge at sentencing says, well, I'm not going to grant or I didn't grant a Rule 29, but I'm going to sentence him on the basis that he did not commit the bank robbery. Would that be error on the part of the district court? Clear error, and that's not what happened in this case. Okay, so why don't you explain that's not why what happened here? Because the court sentenced Mr. Martinez on the basis of all of the counts of conviction. And with respect to all of the counts of conviction, he took into consideration under 3553A both acquitted and non-acquitted conduct. He didn't specify any one count and say, well, I don't believe the person's testimony with respect to that one count. What he said was he was troubled about the overall testimony with respect to all of the counts. And that is something that he's required to do under the law. He should do under the law. And the second circuit case authority says he can consider acquitted conduct, but it has to be supported by the preponderance of the evidence. And I don't think that there's anything presented here that's not supported by the preponderance of the evidence with respect to Judge Coleman's ultimate findings. With respect to acquitted conduct. Well, I guess that's getting into the cross appeal anyway. That's fine. Why don't we hear from the government, and then we'll hear back from counsel for the appellants. You've reserved five minutes. So why don't we hear from the government? And I don't know, you can start wherever you like, but you've got 12 minutes. Thank you, your honors. May it please the court. My name is Rachel Shanus, and I represent the United States in this case. I am not going to spend a lot of time on the defendant's appeal because it sounds like the court is very familiar with the record. I will simply note that the victim's testimony at government appendix 54 to 57 on that issue is extraordinarily clear. She testifies that physical force was used in the course of the relevant rape here, both with respect to the force used for the rape itself that caused significant vaginal bleeding, as well as the force used to hold her down, pin her arm back, put her on the desk. And it's very clear from Second Circuit precedent that that restraint, as well as that injury, is sufficient to constitute the force required for aggravated sexual abuse and the deprivation of civil rights. So unless the court has any questions with respect to the appeal. Why don't we turn to the sentence? I'll turn to the cross appeal, certainly. So with respect to the cross appeal, despite the jury's findings that Martinez raped Maria once using physical force and five times using fear or threats, the district court unreasonably sentenced Martinez as if he had committed only the lesser crime of sexual abuse of a ward. That lesser crime does not require any force or threats, but only that the sex act take place in a context where the victim is a ward. The victim may otherwise be a willing participant in the sex act. Counsel, I didn't see any reference to plain error in your briefing, but it didn't look to me from the transcript like the government objected to the sentence. Certainly, I didn't see any objection to substantive reasonableness. I don't know if you have a contention that the discussion during the sentencing constitutes an objection on the procedure, on the judge's approach. But there's certainly not an express objection to the sentence imposed. So aren't we proceeding at least as to substantive reasonableness under plain error? So, Your Honor, I think, first of all, the government advocated for a significantly higher sentence. And I do believe the record shows that the government repeatedly tried to clarify with the court the appropriate standard, the testimony from the trial. So I do think they did make an effort to preserve the, to acknowledge their concerns with the way that the court was approaching the sentencing, and in particular the way the court was approaching the facts that the court was relying on in the sentencing. But as to substantive reasonableness, I mean, I'll tell you it's common to see the court say, is there anything else counsel and counsel to say, one side or the other, usually the defendant. Your Honor, for the record, you know, we object to the sentence imposed on the grounds of both substantive. There's a preservation of the objection, and we routinely, I don't know what percentage it is, but we routinely review defendant's objections to sentencing issues for plain error because they're not preserved. Is that not, should we not be doing that here? Is there any reason we shouldn't be looking at the government's arguments at least as to substantive reasonableness for plain error? Your Honor, I think, again, that the statements made by the government were sufficient to make clear on the record that they objected to the approach. But you said that before you do the sentence, they, the prosecutors made statements before the sentence of 10 years was announced, and what you object to now is the 10 years. Yes, well, yes, we object to the 10 years on substantive reasonableness, but I think it also comes within the context of the sentencing as a whole, throughout which the government was making a very clear record that they did not agree with the approach that the court was taking. Yeah, I'm not sure that defendants either routinely say at the end, just for the record, I think your sentence is substantively unreasonable, and it's a little odd to require them to do so. They're making a big pitch that this is what the right sentence should be. They get told this is what the judge thinks is the right sentence. The notion that if you get up and say, well, I do think your sentence is substantively unreasonable, the judge will say, hmm, I need to reevaluate everything I've thought about this case up until now, now that you say it's substantively unreasonable. That doesn't seem to be the sort of thing that is likely to be corrected by a judge, whereas with respect to procedural issues, if there's not an adequate explanation, consider the wrong facts, we do sort of expect that somebody points out to the judge that this is wrong. And it seems to me at least as to the procedural issues, the government was quite clear in saying, no, you're doing this wrong. Let me explain to you how you should be doing it. Can I ask this question? If hypothetically we were to agree with you that there was procedural unreasonableness, would there be any reason for us to engage in a substantive reasonable analysis? Would we even have to figure out how or if it was preserved? Because by definition, we would be suggesting that the corpus of facts or procedures used to come up with that number was undermined, and that there had to be a do-over anyway. So certainly the court can consider just the procedural question, and courts have done that. But in a case like this where the two issues are so deeply intertwined with each other, I think it makes more sense to do both together. I'm not sure they are so intertwined. The procedural issue is primarily whether the judge misconceived the facts on which the sentence was being imposed. And if told that that's what you did and now you better conceive it this way, then it would be a whole new ballgame as to what the reasonable sentence might be. So it would be something of a moot point for us to address substantive reasonableness if the case needs to be done over anyway. You haven't asked for it to be returned to a different judge. We are not taking a position on that, but we do note that there was... Well, you have to ask for it or it's not going to happen. The defendants are not very shy about asking for such remands, and they often do, and often it's denied, and sometimes it's granted. But if you don't ask, you don't get, and you didn't ask. There's a request that the sentence be reversed and remanded, A, because the procedures were improper, and that's something that can be fixed a second time around, and B, because the sentence was substantively too light. And that, too, you know, we don't... I don't know if there's ever been a case where this court or any other court of appeals has ever said, this is too light, it has to be at least X. We just say, too light. Now, guess again. And then sometimes it comes back. Well, maybe 11, maybe 12, maybe 15. And then if the government doesn't like that, it can come back again. But either way, if you want a different judge, that's a specific form of relief rarely granted, and I don't know that it's ever been granted nostris fonte, as we say in Latin. Understood, Your Honor. I may recall the case where we did. But let me ask you this. Following Judge Lynch's questions, a follow-up to that, and I don't know what is the current internal rule within DOJ. Do you need SG approval in order to ask for reassignment to another judge, or is that a circuit-by-circuit thing now? I believe I do need approvals to make that request. All right. So we don't want to put you on the spot and suggest that you can make an on-the-spot pivot. I wasn't suggesting you could make an on-the-spot pivot. I was suggesting that's gone, because unless we do it of our own motion, you did not ask. I was just confirming that. You did not ask. You have not asked. And I take it if you need the Solicitor General's approval, you should have gone and got it if that's what you wanted to ask, and it's not asked for. Yes, Your Honor, that is correct. We have not made that request. Okay. Can I ask you about the statement of reasons? Yes, of course. I'm looking at that on page 570 of the government's appendix. Well, I guess that's the continuation. It starts on 569. Is it the government's contention that that is a particularly clear manifestation of the district court's premising its decision on its view of the evidence that, well, the district court said it should have granted the judgment acquittal. As to all the counts of sexual abuse, it lists the numbers of them, and that that constitutes effectively a factual finding of not guilty, that the defendant was not guilty of those, even though he didn't grant the judgment acquittal. And that that is effectively a recitation of facts that the district court has told us that it based its decision on, at least in part. Yes, Your Honor. That is certainly a significant part of the record that is indicative of what happened here. There were two things that happened post-sentencing that I think are very clear and very concerning in terms of showing the fact-finding the judge made that was counter to the jury's factual finding. The statement of reasons that Your Honor just pointed to is one of those things. The other is the revised PSR, in which the court directed, apparently, according to the PSR probation, to amend the PSR to reflect the jury's findings with respect to the victim's testimony that's at Government Appendix 537. And it states for the court's directive, the PSR is amended to reflect that the jury found many aspects of the victim's testimony about the circumstances under which she had sexual intercourse with a defendant not credible. Yeah, and just on that point, do we ever know why a jury acquits? Ever? No, Your Honor. And I think that's one of the big issues here is there's many reasons a jury might acquit. It does not mean that the testimony was false. It doesn't mean that they didn't credit it. As Your Honor, Judge Lynch noted, there were differences in terms of the corroboration with respect to the different incidents of rape. And it may just have been in one they felt more comfortable with the beyond a reasonable doubt standard. The Supreme Court has clearly found that we don't look behind that curtain. It can be compromise. It can be lenity. It can be mistake. So the acquittals in this case, I think, are largely irrelevant. The acquittals basically – let me put it another way. The acquittals leave space for the district court to make its own findings on issues as to which the jury has not returned a verdict of guilt. But when the jury does return a verdict of guilt that is not overturned, those are preclusive findings on both the district court and us for that matter, right? Absolutely. Assuming that they are not to be overturned for evidentiary insufficiency or some other defect, right? Absolutely. And that's where I think the district court stepped beyond the bounds of its role in this case, making the statements at sentencing about considering this a one-count conviction case. How should he consider this as a sexual abuse of award only case? And his repeated questioning about the veracity of the victim's testimony when, at least with respect to the two most significant counts, clearly the jury did credit the victim's testimony in this case. Can I ask a slightly different question, at least with respect to the statement of reasons as opposed to what the judge said at sentencing? It seemed to me the judge is saying something different and that it corresponds a little bit to what Mr. Rico was arguing. That what he says is, with respect to that first incident and the specific piece of the first incident on which the jury convicted, which is the vaginal rape, he says in the statement of reasons on 570, the victim did not testify she consented because of threats or fear. Instead, she testified that it was brought about by force. And that seems to be making a legal argument that there is a distinction between forcible rape, which in the judge's view wouldn't count for the counts 4 and 5, and threats or fear. Now, I know there are places in the record where there is testimony about threats of abuse of authority, for example. And there may be an argument, I think there's an argument that's been supported by cases in several other circuits, that once someone has engaged in forcible rape, then there is always an implicit threat later on. That's sufficient for a jury to find that a later episode was brought about by a fear of the same thing, even if the victim acquiesces the second or third time without the need for force. And Mr. Rico made the argument that is slightly different, that as a matter of law, at least the civil rights count requires something more than forcible rape, but specifically a threat of death or more serious bodily injury. I take it that you disagree with what I'm characterizing as a legal argument by the judge and with the legal argument that was clearly made by Mr. Rico. Could you just elaborate on that point? Sure. So one thing I just want to make sure is very clear is with respect to every instance of rape, the jury found the defendant guilty of rape by threat or fear. That's the sexual abuse charges. So they did find that in every instance. With respect to the two charges that related to the first, vaginal rape, that's the aggravated sexual abuse, which requires either the use of force or the use of a threat rising to the level of death or severe bodily injury. So the sexual abuse charges, they actually exclude that level of threat. That's more along the lines of a threat of consequences like being put into solitary confinement, a threat of losing a good time. Right, so if you hit an officer, you know you could get an extended jail term, which they specifically testified to. Now, with respect to the deprivation of civil rights, frankly, I'm not sure of the legal basis for the argument that there is a distinction between what's required in terms of the physical force used for aggravated sexual abuse and the deprivation of civil rights because the deprivation of civil rights statute, in fact, cross-references the aggravated sexual abuse charge. And there are two sub-provisions of the aggravated sexual abuse charge. One is the use of physical force, which we've talked about here. The victim testified very clearly that force was used. It does not have to be a potentially lethal use of force. It doesn't even have to be violent force. It can simply be restraint. I think what my opposing counsel is referring to is maybe the second sub-provision, which does require a much more severe form of threat, and that's not what was charged here. So I don't think that that's relevant to the testimony. Right, I mean, I've always taken that to mean that either the use of physical compulsion or the use of a threat where there is no physical compulsion, that the threat is characterized a certain way. Exactly. Yes, that's the government's understanding as well. But those are alternatives. Yes, Your Honor. I'm well over my time, but if anyone has any further questions, I'm happy to answer them. No, that's good. Why don't we hear from Mr. Rico. Mr. Rico, we're going to set the clock to five minutes this time. I know it's a little complicated or back and forth. No, it's okay. Thank you. I just wanted to make one point about the substantive reasonableness of Judge Korman's decision. And I want to focus in on the events that took place on April 2016. And in that incident, the defendant was convicted under the fear under sexual abuse, but he was acquitted under the force April 16th. And a part of the evidence that Judge Korman relied upon is not just trying to do a Ouija board with what the jury found, but the government actually stipulated on defense stipulation two, as to the testimony as to what happened on that particular date. That was in evidence stipulated by the government. So if one says, is there a preponderance of evidence that supports Judge Korman's decision with respect to that means that he didn't do what the government charged him with on that date. That's different than the date on which the jury found guilt, right? No, the jury did find guilt with respect to, yes, Judge. Yes. You're referring to the April. That's right. And on that, the jury acquitted on force. They acquitted on force. And there's no question that Maria, the witness, testified to physical force. That's correct. And evidently, the jury had a reasonable doubt about that testimony as relates to that occasion. That's right. And also on the December 13th, the jury also acquitted the defendant on the counts one and two on the force theory. Right, which is the oral. Yes. So the question of whether or not there's a preponderance of evidence to support the findings with respect to 3553A, it's not like the court is looking at the record in total, the background and history of the defendant. Yeah, but I'm just saying that can't entitle the Judge Kennett to disregard what the jury did explicitly find beyond a reasonable doubt as to the count on which they convicted. Agreed, Judge. But I don't think- That's the problem. But I don't think- The judge is saying, overall, taking everything into account, this just boils down to the situation of having sex. Even with someone who came to you and begged you to have sex with them, if they are under your control, it's just like a ward. It's nothing else for the whole thing. Judge Lynch, that wasn't my impression of that's what Judge Corman did here. I think that Judge Corman looked at the record in its entirety and he made factual findings with respect to individual circumstances that the court was supposed to consider with respect to- Am I correct that Lieutenant Martinez testified at the trial and from the beginning, she was basically coming on to him? That's correct. And there were other evidence in the record for that, also about the prosecution witnesses. But the jury evidently did not believe that as to at least some of what happened on that first day. That's correct. But they did believe it with respect to some of the counts on that day, too, because you had Kiara Maldonado's testimony. No, not quite. Because as I understand it, the sex with a ward counts were stipulated and were not an issue at the second trial at all. Well, I'm not talking about sex. I'm talking about the deprivation of rights on the count one and two. The threats part must have been believed by the jury with respect to the subsequent acts as well, because they convicted on those. That's correct. But on the same day, with the same charges, count one and two, they acquitted. And there's testimony from Kiara Maldonado that would provide a preponderance of evidence with respect to the acquitted conduct. So the evidence is there. It's not like he just looked away. It's there. It's Kiara Maldonado's testimony with respect to those counts of acquittal for the December 13th date that provides a preponderance of evidence with respect to what Judge Corman found ultimately in imposing a substantial ten year sentence. I'm done. I promise not to take my whole five minutes. Very well done. And I wanted to stick to it. You may be the first person today. Well, no, there were a couple others. Why don't we hear from the government? Now we're down to three minutes. So let's see how we do with the timer. I think I'll be very brief. The only thing I just wanted to note in response is this commentary about the judge being allowed to consider the acquitted conduct. With respect to the statement of reasons, he makes reference to the sexual abuse charges. There were no acquittals with respect to the sexual abuse charges. That was the conviction for every single count. So I don't think that that can sort of explain what's going on in the statement of reasons when the district court says that they should have essentially set aside the sexual abuse charges. You're saying that if someone is acquitted of aggravated bank robbery but convicted of bank robbery, you can't sort of sneak in this whole idea of, well, the judge has freedom to make factual findings by preponderance as to acquitted conduct and thereby find there was no bank robbery at all. Exactly. And that's it for me unless the court has further questions. Thank you very much. Thank you. Very well argued on both sides. Thank you very much to all of you. We reserve decision.